# In the United States Court of Federal Claims

No. 12-920C

(Filed: June 7, 2018)

|  |  |
|---|---|
| STEPHANIE MERCIER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Keywords: Overtime Pay; Class Action; Motion for Class Certification; Commonality; Typicality; RCFC 23. |

*David M. Cook*, Cook & Logothetis, LLC, Cincinnati, OH, for Plaintiffs. *Clement L. Tsao*, Cook & Logothetis, LLC, *William Michael Hamilton*, Provost Umphrey Law Firm LLP, Nashville, TN, *Guy Fisher*, Provost Umphrey Law Firm LLP, Beaumont, TX, *E. Douglas Richards*, E. Douglas Richards, PSC, Lexington, KY, and *Robert H. Stropp, Jr.*, Mooney, Green, Saindon, Murphy & Welch, P.C., Washington, D.C., Of Counsel.

*Alexis J. Echols*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *Reginald T. Blades, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant. *Jessica R. Toplin*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Plaintiffs in this case are Advanced Practice Registered Nurses (APRNs) and Physician Assistants (PAs) who are or were employed by the Department of Veterans Affairs (VA). They claim that as a result of the VA's nationwide policies, they were induced to work overtime to update patients' electronic health records and monitor and respond to certain patient-related notifications. Plaintiffs have now moved to certify an opt-in class pursuant to Rule 23 of the Rules of the Court of Federal Claims (RCFC). The government opposes Plaintiffs' motion. As discussed below, the Court concludes that RCFC 23's requirements for maintaining a class action are met in this case. Accordingly, Plaintiffs' motion is **GRANTED**.

**BACKGROUND**

I.  Overview

The named plaintiffs in this putative class action are four APRNs and one PA who currently work or formerly worked for the VA as title 38 employees.[1] 1st Am. Compl. (Compl.) ¶¶ 4–9, 11, ECF No. 56. They claim that they "have not received overtime pay or compensatory time off to which they are entitled under 38 U.S.C §§ 7453 and 7454 and under VA regulations and policies for all hours of work that they performed on a recurring and involuntary basis." Id. ¶ 1.

Plaintiffs' claims stem from time they assert they were required or induced to spend "performing patient care clinical duties and professional responsibilities managing electronic health records using VA, non-VA, or personal home computers or laptops" outside of their regular tours of duty, primarily in connection with receiving and managing "View Alert" notifications. Id. ¶¶ 17, 20. According to Plaintiffs, view alerts are electronic notifications that "communicate test results and other important clinical information," and which are delivered through the VA's Computerized Patient Records System (CPRS). Id. ¶ 20. Plaintiffs allege that these alerts "may be sent from, or . . . generated by[] other providers, pharmacies, laboratories, patients, and other individuals and locations from within as well as outside the VA system," and that they "may be sent at any time and at any hour of the day or night and are continuously sent to a provider to review and manage." Id.

According to Plaintiffs, "[m]anaging View Alerts and electronic patient health records using a VA, non-VA, or personal home computer or laptop constitutes patient care and clinical duties . . . and is compensable VA work for purposes of awarding basic and additional overtime pay under 38 U.S.C. §§ 7404, 7453, and 7454 and under overtime regulations and policies of the VA." Id. ¶ 23. They allege that "VA personnel with the authority to order or approve overtime work and pay," including "nurse and physician assistant supervisors," "expected" and "required" Plaintiffs to "work . . . additional hours in order to timely manage their View Alerts." Id. ¶ 24. Failure to do so, Plaintiffs claim, could "subject [them] to intensified scrutiny, management intervention, and disciplinary action for poor time management"; "jeopardize patient health and safety and cause adverse patient outcomes, which also results in intensified scrutiny"; and/or "result[] in harm to patients," which "may subject the nurses, physician assistants, and/or the VA to medical malpractice claims and/or claims from state licensing authorities." Id. ¶¶ 25–27. Further, Plaintiffs allege, the VA effectively approved their performance of overtime work by granting them after-hours access to the

---

[1] As the Court observed in a previous opinion in this case, title 38 "establish[es] a personnel system that gives the Secretary of Veterans Affairs authority over hiring and other personnel-related matters, and that is largely independent of title 5 of the United States Code, which generally governs the federal civil service." Mercier v. United States (Mercier I), 114 Fed. Cl. 795, 797 (2014) (citing 38 U.S.C. §§ 7401–74), rev'd, 786 F.3d 971 (Fed. Cir. 2015) (Mercier II).

CPRS system and providing them with laptops and/or remote access privileges that allowed them to manage view alerts outside their regular tours of duty. See id. ¶¶ 23–24, 50.

## II.     History of This Litigation

On December 28, 2012, Plaintiffs Stephanie Mercier and Audricia Brooks filed a complaint in this Court on behalf of themselves and similarly situated VA employees. ECF No. 1. The government filed an answer, ECF No. 10, but then later filed a motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6), ECF No. 13. While that motion was pending, the case was transferred to the undersigned. ECF No. 21.

On February 27, 2014, the Court granted the government's motion to dismiss. Mercier I, 114 Fed. Cl. at 802. As the Court explained, under title 38, VA nurses and physician assistants are entitled to overtime pay "for 'officially ordered or approved hours of service performed in excess of 40 hours in the administrative workweek or in excess of eight consecutive hours.'" Id. at 800 (quoting 38 U.S.C. § 7453(e)(1)). The Court observed that the phrase "officially ordered or approved" was "essentially identical" to the language used in the analogous portion of the Federal Employee Pay Act (FEPA). Id. at 800–01. Therefore, the Court reasoned, an overtime claim under title 38 could succeed only if, as with a claim under FEPA, the employee was "expressly directed . . . to perform specified hours of overtime outside of their regular shifts." See id. at 802 (discussing, inter alia, Doe v. United States, 372 F.3d 1347 (Fed. Cir. 2004)). And because Plaintiffs "ha[d] not alleged that they were expressly directed to work specific overtime hours for which they were not compensated," the Court granted the government's motion. See id.

Plaintiffs timely appealed, and the Federal Circuit reversed. Mercier II, 786 F.3d at 982. It held that the use of the "expressly directed" standard under FEPA was traceable not to the statutory "officially ordered or approved" language itself, but to an OPM regulation interpreting that language for purposes of implementing FEPA. See id. at 981 (discussing, inter alia, Doe, 372 F.3d at 1360–62). Further, following Anderson v. United States, 136 Ct. Cl. 365 (1956), it held that in the absence of a similar implementing regulation, overtime may be "officially ordered or approved" where it is "induced" but not expressly directed. See id. at 982. It therefore remanded the case to allow the Court to apply the Anderson standard to Plaintiffs' claims. Id.

## III.    Plaintiffs' Motion for Class Certification

On remand, the parties engaged in discovery regarding class certification issues. Following the close of discovery, Plaintiffs filed the motion for class action certification that is currently before the Court. In their motion, Plaintiffs propose the following class definition:

> [A]ll advanced practice registered nurses ("APRNs") and physician assistants ("PAs"):

3

> • who have been, are, or will be employed by Defendant during at least any one pay period beginning after December 28, 2006;
>
> • who have performed, are performing, or will perform compensable patient care and clinical duties managing View Alerts and electronic patient health records in the VA's Computerized Patient Records System ("CPRS");
>
> • who used, are using, or will use VA, non-VA, or personal home computers or laptops to manage view alerts and electronic health records; who on a recurring and involuntary basis worked, work, or will work additional hours, significantly in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of their daily work requirement managing view alerts and electronic health records;
>
> • who did not, do not, or will not receive overtime pay at one and one-half times their hourly rate of pay, premium pay, or compensatory time off in lieu of overtime pay for all additional hours worked; and
>
> • who work, have worked, or will work at VA facilities where at least one opt-in plaintiff also works, or has worked, as of [November 30, 2017].

Pls.' Mot. to Certify Class Action (Pls.' Mot.) at 1–2, ECF No. 127.

In support of their motion, Plaintiffs have provided the Court with portions of certain VA handbooks and directives regarding overtime, health record management, and remote access to the VA's computing systems; research studies discussing VA practitioners' management of electronic health records and view alert notifications; deposition testimony from the named Plaintiffs; deposition testimony from Dr. Hardeep Singh, a medical researcher; and deposition testimony from several VA RCFC 30(b)(6) witnesses regarding the VA's view alert policies and the technical aspects of remotely accessing the VA's network. See Pls.' Notice of Filing of Depositions, ECF No. 125; Pls.' Mot. App., ECF No. 127-1; Pls.' Reply in Supp. of Mot. to Certify Class Action (Pls.' Reply) App., ECF No. 133-1.

The gravamen of Plaintiffs' legal theory, as supported by the evidence submitted in connection with their motion, is that under VA policy, APRNs and PAs were required to promptly review and respond to view alerts. See Pls.' Mot. App. at A48 (excerpt from VA Handbook stating that "[e]lectronic health record users must respond promptly (as defined by facility policy) to 'View Alerts[]'"). Further, they allege that professional standards require prompt review of view alerts, and that such prompt review is also required to protect patient health and safety and to avoid the risk of malpractice claims. See id. at A47–48; see also id. at A154 (excerpt from VA directive stating that "the timely communication of test results . . . is essential to ensuring safe and effective health

4

care"); Singh Dep. at 127:12–129:25, ECF No. 125-4 (VA 30(b)(6) witness testifying that failure to promptly review and respond to view alerts could compromise patient care). In addition, according to Plaintiffs, APRNs and PAs may be subject to discipline or counseling for failing to promptly manage their view alerts. See Pls.' Mot. App. at A39–40 (setting mandatory policies regarding the timing of record completion); Mercier Dep. at 52:3–62:25, ECF No. 125–6; Brooks Dep. at 50:1–52:10, ECF No. 125–7. Further, under VA policy, Plaintiffs could (and did) request and receive remote access to the VA's network for the purpose of performing view alert management during their off-duty hours. See Pls.' Reply App. at A35–36.

The government opposes Plaintiffs' motion on several grounds. See Def.'s Opp'n to Pls.' Mot. to Certify Class (Def.'s Opp'n), ECF No. 132. In particular, as discussed below, it contends that Plaintiffs have failed to satisfy the requirements of commonality, typicality, and superiority. Id. at 1.

## DISCUSSION

### I. Standard for Granting Class Certification

Pursuant to RCFC 23, the Court may certify a class action if:

> (1) [T]he class is so numerous that joinder of all members is impracticable;
>
> (2) [T]here are questions of law or fact common to the class;
>
> (3) [T]he claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) [T]he representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a). Additionally, the Court must find that "the United States has acted or refused to act on grounds generally applicable to the class"; that "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b).

Courts have tended to classify these requirements into five categories: 1) numerosity; 2) commonality; 3) typicality; 4) adequacy; and 5) superiority. Common Ground Healthcare Coop. v. United States, No. 17-877C, 2018 WL 1833427, at *4 (Fed. Cl. Apr. 17, 2018); Barnes v. United States, 68 Fed. Cl. 492, 494 (2005). These requirements are "conjunctive," meaning that all must be satisfied for the court to certify the class. Common Ground Healthcare, 2018 WL 1833427, at *4; Barnes, 68 Fed. Cl. at 494. The plaintiff bears the burden of establishing these requirements. Fisher v. United States, 69 Fed. Cl. 193, 197 (2006).

## II.  Application

### A.  <u>Numerosity</u>

To meet this requirement, RCFC 23(a)(1) requires that the potential class be so numerous that joinder is impractical. Courts have found that potential classes exceeding forty satisfy this requirement. Haggart v. United States, 89 Fed. Cl. 523, 530–31 (2009) (noting this general rule and finding that potential class of at least 750 plaintiffs satisfied requirement). Some courts have also considered geographic dispersion in considering numerosity, noting that "[i]f plaintiffs are dispersed geographically, then a court is more likely to certify a class action." Id. at 532 (quoting King v. United States, 84 Fed. Cl. 120, 124–25 (2008)) (alteration in original).

It is clear that the numerosity requirement is met in this case. According to Plaintiffs, more than three hundred APRNs and PAs from across the country have already opted in to this lawsuit. Pls.' Mot. at 12. Further, Plaintiffs assert that the entire class could consist of several thousand current and former employees. Id. Because it would be impractical to join such a large number of plaintiffs, the Court concludes that the numerosity requirement has been met.

### B.  <u>Commonality</u>

The second requirement for class certification, commonality, is also met here. RCFC 23(a)(2) requires that there be "questions of law or fact common to the class." The threshold for satisfying this requirement is not high: the requirement "is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." King, 84 Fed. Cl. at 125–26 (quoting Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993)); see also Barnes, 68 Fed. Cl. at 496 (commonality test met if "the questions underlying the claims of the class . . . share essential characteristics, so that their resolution will advance the overall case").

Further, to establish commonality, the Court must find that "the United States has acted or refused to act on grounds generally applicable to the class" and that "the questions of law or fact common to class members predominate over any questions affecting only individual members." RCFC 23(b). Common questions predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Barnes, 68 Fed. Cl. at 496 (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)).

The Court concludes that these requirements are met here. First, the case involves a number of questions of law and fact that are common to the class. For example, as Plaintiffs point out, the Court must determine whether, based on the VA's policies regarding APRNs' and PAs' duties, the processing of view alerts constitutes the performance of patient care. See Pls.' Mot. at 13–14. Further, it must decide whether the VA's policies, including those regarding the class members' patient care duties, coupled

6

with the VA's policies regarding remote and/or after-hours access to the electronic patient care system, constitute either an inducement of or approval to work overtime for those PAs and APRNs who were granted remote or after-hours access outside their regular tours of duty. See id. Finally, the Court must determine whether the VA systemically denied overtime pay to PAs and APRNs who performed view alert management on an overtime basis.

Second, the requirement that the United States have acted on grounds generally applicable to the class is met by the VA's centralized issuance and implementation of the policies regarding patient care and remote and/or after-hours access, and its alleged policy under which PAs and APRNs who perform view alert reviews outside of duty hours cannot claim an entitlement to overtime compensation absent explicit supervisory approval. According to Plaintiffs, under the VA's system, view alert management is considered part of APRNs' and PAs' mandatory patient duties. VA policies require the alerts to be "accurate, relevant, timely, and complete" and require that APRNs and PAs respond to them "promptly." See Pls.' Mot. App. at A47–48. APRNs and PAs who fail to comply with these policies risk adverse employment actions. Further, Plaintiffs contend that view alerts "often contain time-sensitive requests for information or follow[]up" and a failure to review and manage them in a timely way can result in serious consequences, "ranging from delays in diagnosis or treatment, to patient harm, to malpractice claims, and loss of professional licensing or certification." Pls.' Mot. at 4. Finally, Plaintiffs allege that rather than adopting policies which require them to perform these duties during their regular working hours (and preclude them from doing so on an overtime basis), the VA does precisely the opposite: it maintains a policy of giving APRNs and PAs laptops and granting them remote access to the system so that they can manage their view alerts outside of their tours of duty. See id. at 13–14 & n.8. At the same time, according to Plaintiffs, VA policy does not entitle APRNs and PAs to overtime pay when they engage in view alert management during off-duty hours by employing the laptops and remote access the VA has provided them. See id. at 8.

Finally, the common questions predominate over individual issues. Thus, as noted, the gravamen of Plaintiffs' case is (1) that there exists a widespread practice of APRNs and PAs managing their view alerts outside their regular tours of duty in order to comply with their patient care responsibilities; (2) that the VA induced them to perform this overtime work by providing them with laptops and remote access to the view alert system; (3) that the VA is aware that class members are managing their view alerts outside of their tours of duty; and (4) that it has nonetheless systematically failed to provide overtime compensation to class members who do so. Determining what individual plaintiffs are owed will therefore be essentially a mechanical process if the Court agrees that the APRNs and PAs who were granted remote access and used it to manage view alerts outside their regular tours of duty were induced to perform after-hours patient care, or that granting them remote access that was operative beyond their regular tours of duty constituted approval of their overtime work. Alternatively, should the Court resolve the common questions in the government's favor (by finding that VA policies neither induced class members to manage their view alerts outside of their tours of duty or approved their doing so), then the lawsuit will come to an end. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (observing that the "common

contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

The government's arguments to the contrary are unpersuasive. First, it claims that Plaintiffs have not established that the United States acted or refused to act on grounds generally applicable to the class because there were occasions when APRNs and PAs did receive overtime pay when they managed view alerts and electronic health records outside of regular tours of duty. Def.'s Opp'n at 17–18. But the existence of such occasional instances where the VA approved overtime pay does not undermine the predominance of common questions of law and fact which arise out of Plaintiffs' claim that the VA maintained general policies which induced APRNs and PAs to manage their view alerts on an overtime basis without affording them an entitlement to overtime pay for that work. To the extent that some APRNs and PAs received overtime pay notwithstanding the general policy, that fact goes to the amount of damages, not to the commonality question.[2]

Second, there is no merit to the government's argument that class certification is improper because "[t]o prevail on their claims, each plaintiff must establish that someone with the official authority to order or to approve overtime expected, required, or induced her to work overtime managing view alerts or electronic patient health records," which will depend, "for each circumstance of inducement," on individual issues. Id. at 12. For example, the government argues that "supervisors across facilities individually exercised wide latitude to determine how to handle each practitioner's management of her workload, including management of view alerts and electronic patient health records and compensation for overtime worked for such activities." Id. at 13; see also id. at 15–16 ("Although timely management of view alerts and related electronic patient health records is essential to patient safety . . . . [d]iscretion is left to VISNs and facilities to develop their own policies regarding the monitoring of providers' management of view alerts.").

---

[2] The case thus differs from Jaynes v. United States, 69 Fed. Cl. 450 (2006), cited by the government in its opposition. In Jaynes, the purported class members sought additional pay for "high work" performed at heights below 100 feet where the conditions were unusually dangerous. See id. at 451. The court held that the plaintiffs could not establish that common questions predominated because determining liability would require a fact-intensive inquiry into whether each individual plaintiff worked in those conditions, which each class member would have to establish through "evidence of a general and anecdotal nature"—i.e., their recollection. See id. at 458. Here, by contrast, if the Court agrees with Plaintiffs' theory of liability, each class member's entitlement to pay will be based on objective information revealing the amount of time they spent working on view alerts remotely and after-hours. See Curry v. United States, 81 Fed. Cl. 328, 334 (2008) (observing that the "'fact that damage award will ultimately require individualized fact determination is insufficient, by itself[,]' to defeat a class action" (quoting McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984))).

Even assuming that there were local variations in the manner or extent to which supervisors dictated the priority that class members were to give view alerts, however, Plaintiffs' case focuses on whether general, VA-wide policies induced them to perform view alert management on an overtime basis, not on the actions (or inactions) of individual supervisors.[3]

The government also contends that APRNs and PAs working in specialty areas receive fewer view alerts than those working in primary care; that "no national policies exist concerning the types of view alerts that providers receive or how clinicians manage communications prompted by view alerts"; and that "there is no uniform [VA]-wide training related to view alert or CPRS management, which significantly affects efficiency in processing view alerts at the provider level." Id. at 13–14; see also id. at 15–16 (observing that "the amount of protected [i.e., administrative] time a provider receives to address view alerts is locally determined"). In other words, the government appears to argue that at least some of the APRNs and PAs who monitored their view alerts remotely did so either as a matter of personal preference or because they are inefficient during their tours of duty, rather than because their workloads precluded them from doing so during their tours of duty.

These argument are unavailing because, as Plaintiffs explain, they are not presenting a case that is dependent on whether the class members could have managed their workloads more efficiently. "Instead, the commonality issues are that Providers in overwhelming numbers did work hours beyond their scheduled tours of duty, that the VA did not pay for this work, and that the VA encouraged and induced the after-hours work through its policies and practices." Pls.' Reply at 1–2 (emphasis in original). Thus, if the Court agrees with Plaintiffs that the VA's provision of remote and/or after-hours access capabilities to APRNs and PAs and its generally applicable policies regarding the timely provision of patient care suffice to establish inducement, then the other allegedly individualized variations will be immaterial to its liability.[4] Accordingly, the Court concludes that the commonality requirement has been met.

---

[3] At oral argument, the government described these general policies as a "floor," and argued that something more was required to establish inducement. See Oral Argument at 2:47:10 p.m.–2:47:28 p.m. (May 22, 2018). Plaintiffs' contention, on the other hand, is that the "floor," along with the VA's implementation of its remote access policies, suffices to establish inducement as a matter of law. See id. at 3:18:35 p.m.–3:19:30 p.m. And this question of law is common to all the class members' claims.

[4] In this regard, the government's reliance on Wal-Mart is misplaced. See Def.'s Opp'n at 16 (citing 564 U.S. at 352). In that case, the purported class members' employment discrimination claims turned on an allegation that Wal-Mart's policy of "giving discretion to lower-level supervisors" resulted in discriminatory decisionmaking across the company. See 564 U.S. at 355–56. The Court held that this assertion did not suffice to establish commonality because the employees failed to "identif[y] a common mode of exercising discretion that pervades the entire company." Id. at 356. Here, by contrast, Plaintiffs have identified common practices that span the various VA facilities involved

### C. Typicality

Plaintiffs' claims in this case also satisfy the typicality requirement. For this factor, RCFC 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This "modest" standard is met where "the named representatives' claims share the same essential characteristics as the claims of the class at large." Curry, 81 Fed. Cl. at 335 (quoting Fisher, 69 Fed. Cl. at 200). It is not defeated "even if some factual differences exist between the claims of the named representatives and the claims of the class." Id. (quoting Fisher, 69 Fed. Cl. at 200). Further, "a finding of commonality leads to one of typicality." Id.

Plaintiffs have met this modest standard. Each named plaintiff worked as a title 38 employee during the time period covered by this lawsuit; was granted access to the VA's computing systems outside their regular tours of duty; used that access to manage view alerts and monitor electronic health records; and was subject to the VA's general standards and policies regarding the timely provision of patient care. See Pls.' Mot. at 17–18. In addition, each named plaintiff was denied overtime pay for the work they performed.

The government argues that Plaintiffs have failed to show typicality because "[t]he facts necessary to establish inducement . . . fundamentally differ" for each class member, given that they worked at many different facilities and under a number of different supervisors. See Def.'s Opp'n at 19–20. As discussed, however, Plaintiffs' claim is that the VA's nationwide policies establish inducement (or approval) of overtime as to each APRN and PA who was granted after-hours access to the VA's electronic health records management system and who performed patient care outside their regular tours of duty.[5] See Pls.' Reply at 14. Accordingly, the government's identification of possible variations in the circumstances under which class members may have managed their view alerts during off-duty hours does not demonstrate that the named Plaintiffs' claims are not typical of the class members' claims as a whole.

### D. Adequacy

The fourth factor for class certification requires a finding that "the representative parties will fairly and adequately protect the interests of the class." RCFC 23(a)(4). This includes consideration of whether class counsel will fairly and adequately represent the class and whether the class members have interests that conflict. See King, 84 Fed. Cl. at

---

in the case—including the requirements that view alerts be addressed in a prompt and timely manner and the issuance of remote access and after-hours privileges that allowed class members to perform work outside their regular tours of duty.

[5] Further, because the focus of Plaintiffs' case is on work performed outside the class members' regular tours of duty, neither commonality nor typicality is defeated by the fact that some APRNs and/or PAs may also have used remote access to perform work during their regular tours of duty. See Oral Argument at 2:40:00 p.m.–2:42:22 p.m.

127; Curry, 81 Fed. Cl. at 336; Barnes, 68 Fed. Cl. at 499. Here, the parties do not appear to have any antagonistic interests and the government does not point to any. Further, the Court finds that class counsel have experience litigating similarly complex class actions and will devote time and energy to the litigation—indeed, they have already pursued a successful appeal of the Court's opinion granting the government's motion to dismiss. Accordingly, this requirement is met.

### E.  Superiority

Finally, the rules require that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy" in order to certify a class. RCFC 23(b)(3). This factor is satisfied when "a class action would achieve economi[e]s of time, effort, and expenses, and promote uniformity" while not "sacrificing procedural fairness or bringing about other undesirable results." King, 84 Fed. Cl. at 128 (quotation omitted); see also Curry, 81 Fed. Cl. at 337; Barnes, 68 Fed. Cl. at 499. The court may consider individual members' interests in controlling separate actions, the extent of litigation already begun by other class members, and any difficulties in managing the class action. RCFC 23(b)(3).

The Court agrees with Plaintiffs that because the named plaintiffs are "similarly situated to the potential class . . . 'there is little benefit to having each proposed class member retain counsel, pay filing fees, and submit duplicative pleadings.'" Pls.' Mot. at 21 (quoting Filosa v. United States, 70 Fed. Cl. 609, 622 (2006)). And the Court expects that the class-wide adjudication of the common questions of law and fact will achieve significant economies of time and promote uniformity without sacrificing procedural fairness.

Further, contrary to the government's suggestions, the Court does not believe that "there are likely to be significant difficulties in determining individual class members' entitlement[s] to [recover]" should Plaintiffs prevail. See Def.'s Opp'n at 21 (quoting Fisher, 69 Fed. Cl. at 206) (second alteration in original); see also id. at 22 (contending that "creation of a nationwide class would be unwieldy" because "the Court would need to individually assess each class member's entitlement to recovery in light of each facility['s] and each individual's supervisor's treatment of time spent managing view alerts and electronic patient health records"). Rather, if Plaintiffs' theory of inducement proves meritorious, calculating the class members' damage awards will involve an assessment of the time they spent logged in to the VA's electronic records system performing patient care outside of their regular tours of duty and in excess of forty hours per work week. The case thus differs from Fisher, where the question of whether individual class members would have been entitled to tax refunds depended on potential offsets specific to each class member's individual tax situation. See 69 Fed. Cl. at 206. Plaintiffs have thus shown that the superiority requirement is met.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion to certify a class action under RCFC 23(c)(1) is **GRANTED**. The Court specifically finds, under RCFC 23(a), that:

a. The class is so numerous that joinder of all members is impracticable;

b. There are questions of law or fact common to the class;

c. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

d. The representative parties will fairly and adequately protect the interests of the class.

The class includes the following members:

All advanced practice registered nurses and physician assistants ("PAs"):

1. Who have been, are, or will be employed by the Department of Veterans Affairs during at least any one pay period beginning after December 28, 2006;

2. Who have performed, are performing, or will perform compensable patient care and clinical duties managing View Alerts and electronic patient health records in the VA's Computerized Patient Records System;

3. Who used, are using, or will use VA, non-VA, or personal home computers or laptops to manage view alerts and electronic health records;

4. Who on a recurring and involuntary basis worked, work, or will work additional hours, significantly in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of their daily work requirement managing view alerts and electronic health records;

5. Who did not, do not, or will not receive overtime pay at one and one-half times their hourly rate of pay, premium pay, or compensatory time off in lieu of overtime pay for all additional hours worked; and

6. Who work, have worked, or will work at VA facilities where at least one opt-in plaintiff also works, or has worked, as of November 30, 2017.

The Court designates David M. Cook of Cook & Logothetis, LLC as Class Counsel under RCFC 23(g).

The parties are hereby ordered to file a proposed plan for providing notice to potential class members in accordance with RCFC 23(c)(2) by **July 6, 2018**.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan<br>
ELAINE D. KAPLAN<br>
Judge